# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 6, 2022

Lyle W. Cayce
Clerk

No. 22-40371

———

In the Matter of J. C. Penney Direct Marketing
Services, L.L.C.

*Debtor*,

Klairmont Korners, L.L.C.,

*Appellant*.

———

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:21-cv-139

———

Before Higginbotham, Graves, and Ho, *Circuit Judges*.

Per Curiam:

Klairmont Korners, L.L.C. ("Klairmont") appeals a district court order denying its claim that a debtor's decision to reject a commercial lease pursuant to 11 U.S.C. § 365 should not receive deference under the business judgment rule because of "bad faith, whim, or caprice" inherent in a third party's negotiations with Klairmont. Because Klairmont's contentions fail under this court's own standard for overcoming the business judgment rule, as well as the "bad faith" test Klairmont encourages us to adopt, we affirm.

No. 22-40371

**I.**

Klairmont obtained a sublease from J.C. Penney Properties, Inc. ("JCP") for commercial real estate, where the latter acted as a pass-through entity between Klairmont and the landowner. In 2020, JCP filed for relief under Chapter 11 of the Bankruptcy Code, allowing it to assume or reject ongoing commercial leases pursuant to 11 U.S.C. § 365. Given that the lease and sublease locked in below-market rates, Klairmont stood to gain from assumption, while the landowner would benefit from rejection. A real estate agent hired to negotiate with the parties provided Klairmont with false information to start a bidding war among interested parties and hindered the company's ability to participate fully in the process, although JCP did eventually receive Klairmont's increased bids. Following negotiations, and at the direction of the company purchasing its assets, JCP chose to reject its sublease to Klairmont, a decision generally afforded deference under the business judgment rule.

The bankruptcy court acknowledged that the process was "not one that we can be proud of" but asserted that the decision to reject the lease rested on JCP's own business judgment regarding the financial benefits of each option. Klairmont appealed the bankruptcy court's order to the district court, which affirmed. Klairmont then appealed to this court on two issues: (1) whether "bad faith, whim, or caprice" inherent in a third party's negotiation of contract rejection under § 365 overcomes the business judgment rule, and (2) whether JCP's action at the direction of the company purchasing its assets insulated it from this "bad faith" standard. Because Klairmont's formulation of its proposed standard lacks merit, we do not address the second issue.

No. 22-40371

## II.

In bankruptcy cases, this court employs the same standard of review as a district court sitting in an appellate capacity.[1] The district court reviews a bankruptcy court's findings of fact under a clearly erroneous standard and conclusions of law *de novo*, so we will do likewise.[2] We review *de novo*, and we have jurisdiction under 28 U.S.C. § 158(d).

The federal Bankruptcy Code states that a "trustee [or debtor], subject to the court's approval, may assume or reject any executory contract."[3] Executory contracts include those agreements under which "each side has at least one material unperformed obligation as of the bankruptcy petition date,"[4] a category that includes the sublease at issue in this dispute. A bankruptcy court reviews a debtor's decision to assume or reject an executory contract under the deferential "business judgment" standard.[5] We have held that "as long as assumption of a lease appears to enhance a debtor's estate," a bankruptcy court should only withhold approval when "the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code."[6] Furthermore, "it is

---

[1] *In re SI Restructuring, Inc.*, 542 F.3d 131, 134 (5th Cir. 2008); *Richmond Leasing Co. v. Cap. Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).

[2] *Matter of Berryman Prods., Inc.*, 159 F.3d 941, 943 (5th Cir. 1998).

[3] 11 U.S.C. § 365.

[4] *Matter of Falcon V, L.L.C.*, 44 F.4th 348, 352 (5th Cir. 2022) (citing *In re Weinstein Co. Holdings L.L.C.*, 997 F.3d 497, 504 (3d Cir. 2021)).

[5] *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019); *Richmond Leasing Co. v. Cap. Bank, N.A.*, 762 F.2d 1303, 1308–09 (5th Cir. 1985).

[6] *Richmond Leasing Co.*, 762 F.2d at 1309.

No. 22-40371

the debtor who decides whether to maintain the contract," rather than any third party.[7]

In applying the business judgment standard, Klairmont encourages this court to additionally ask whether JCP's decision "is the product of bad faith, or whim, or caprice."[8] We do not adopt that test today, but we nonetheless demonstrate that Klairmont's claim fails under both standards.

## III.

Klairmont misapprehends the lens through which courts view the business judgment rule. The question is not whether the debtor's decision reasonably protects the interests of other parties, but rather whether the decision "appears to enhance a debtor's estate."[9] This distinction proves fatal to Klairmont's claim, as bankruptcy, by definition, often adversely affects the interests of other parties. The long-standing purpose of allowing debtors to shed executory contracts is to afford trustees and assignees the opportunity to reject "property of an onerous or unprofitable character."[10] The correct inquiry under the business judgment standard is whether the debtor's decision regarding executory contracts benefits the debtor, not whether the decision harms third parties.

Klairmont does not contend that JCP's decision to reject the lease failed to enhance its estate. Neither does Klairmont assert that JCP's action on behalf of its estate was clearly erroneous, too speculative, or contrary to

---

[7] *In re Nat'l Gypsum Co.*, 208 F.3d 498, 505 (5th Cir. 2000).

[8] *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987).

[9] *Richmond Leasing Co.*, 762 F.2d at 1309.

[10] Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN. L. REV. 439, 440 (1973).

the Bankruptcy Code. Under this court's guidance, our inquiry can stop there.

Klairmont's position is untenable, however, even under the test it proposes we adopt from another circuit, under which courts should not defer to a debtor's decision under § 365 that is "the product of bad faith, or whim, or caprice."[11] Klairmont misunderstands this standard, urging this court to hold that any bad faith involved in the bankruptcy proceedings should prompt a bankruptcy court to decline a debtor's decision regarding an executory contract. That is not the test these other courts have adopted. The authority Klairmont cites states that the issue is "whether the decision of the debtor *that rejection will be advantageous* is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice."[12] Under this standard, too, the question revolves around benefit to the debtor, not bad faith affecting third parties.

The other opinions Klairmont cites do not strengthen its argument. To bolster support for its "bad faith" standard, appellant cites *In re Pilgrim's Pride Corporation* for the assertion that "[t]he business judgment rule does not provide [debtors] unfettered freedom to use the power given by Code § 365(a) however they will."[13] Yet the bankruptcy court in that case disapproved of the debtor's action because the debtor rejected an executory contract as retaliation against the third party, which was not a rational

---

[11] *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. at 849.

[12] *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) (emphasis added). Klairmont quotes text from another case, the full text of which reads, "whether the debtor's decision *that rejection will be advantageous to the estate* is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim, or caprice." *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. at 849 (emphasis added).

[13] *In re Pilgrim's Pride Corp.*, 403 B.R. 413, 426 (Bankr. N.D. Tex. 2009).

economic decision.[14] Klairmont also cites *In re Krueger* in an attempt to ground its contention in this court's case law.[15] That case concerned "bad faith" as cause for dismissal of a bankruptcy action under § 707, given that the debtor "abused bankruptcy and court processes to retain assets for himself and defeat the legitimate claims of his business partners."[16] Those circumstances bear little resemblance to the theory Klairmont asserts regarding the business judgment rule.

It is true that bad faith dealing prejudiced Klairmont in its negotiations with JCP for assumption of its sublease. There is no dispute in this case that the real estate agent lied to Klairmont and impeded its dealings with the debtor. Klairmont will not find relief, however, in asserting that JCP's decision deserves no deference under the business judgment rule.

The district court's judgment is AFFIRMED.

---

[14] *Id.* at 428.

[15] *In re Krueger*, 812 F.3d 365 (5th Cir. 2016).

[16] *Id.* at 366–67.